UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

STRATTON NEAL PEAY,                    :
                                                          CIVIL ACTION
                vs.                    :    NO. 02-2688

SUPERINTENDENT DONALD VAUGHN,
JULIE KNAUER, RALPH W. SMITH,          :
SGT. THOMAS and CORRECTIONAL
HEALTH CARE, INC.                      :


MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT,
OF DEFENDANT, RALPH W. SMITH, M.D.

Moving defendant, Ralph W. Smith, M.D. ("Smith"), by and through his attorneys, Gold,

Butkovitz & Robins, P.C., hereby moves before this Honorable Court for the dismissal of Plaintiff's,

Stratton Neal Peay ("Peay"), Amended Complaint in this matter, pursuant to Federal Rule of Civil

Procedure 12(b)(6), and in support whereof, states as follows:

1.      Plaintiff, Peay, commenced this matter with the filing of a Complaint, on or about

September 13, 2002, a true and correct copy of which is attached hereto as Ex. "A".  Moving

defendants subsequently filed a Motion to Dismiss, to which Plaintiff on or about January 30, 2003,

now represented by court-appointed counsel, filed in response an Amended Complaint, a true and

correct copy of which is attached hereto as Ex. "B".

2.      Peay, an inmate at the State Correctional Institution at Graterford, Pennsylvania ("SCI-

Graterford") has filed a Complaint (and now an Amended Complaint) alleging claims pursuant to 42

U.S.C. §1983, including claims against defendant, Smith, a physician at SCI-Graterford, as well as

against Vaughn, Superintendent at SCI-Graterford, Knauer, the Health Care Administrator at SCI-

Graterford, Graterford Prison, The Department of Corrections of the Commonwealth of Pennsylvania,

a correctional officer identified as Sgt. Thomas.  Plaintiff, in his original Complaint, named an entity

which Peay calls "The Medical Care Corporation for ."  In his Amended Complaint, he has changed

the named of this last defendant to "Correctional Health Care, Inc." and apparently dropped The

Department of Corrections.

3.      As to this last "entity," moving defendant, Smith, knows of the existence of no such

entity named "The Medical Care Corporation for ," nor any entity named "Correctional Health Care,

Inc."

4.      Peay in his Complaint, alleges a variety of claims against different defendants, relating to

the alleged failure to provide him with medical care, to assure that he was provided with medical care,

and to protect him from being physically and/or sexually assaulted in his prison cell.  (Exs. "A" and "B")

5.      For the reasons discussed in the accompanying Brief in Support of this Motion to

Dismiss, which brief is incorporated herein as if set forth fully herein at lengthy, Peay's claims against

moving defendant, Smith, should be dismissed for several reasons.

6.      First, Plaintiff, in his original Complaint, failed to allege that he has fully and completely

exhausted the available administrative remedies, pursuant to the Prison Litigation Reform Act, 42

U.S.C. §1997e(a), and therefore his claims should be dismissed.  While Peay contends that he

submitted certain grievances on certain dates, he fails to allege that any of those grievances were fully

exhausted through the three levels provided for by the Department of Corrections policy DC-

ADM804.  (A copy of which is attached hereto as Ex. "C")  Likewise, Peay fails to allege that

defendant, Smith, was the subject of any of these grievances.  Finally, at no time does Peay indicates

that in any of his grievances, he requested a monetary remedy.  The Department of Corrections

grievance procedure provides an administrative remedy for monetary damages.  See DC-ADM804.

The failure to exhaust the monetary damages means that Peay has not exhausted his administrative

remedies.  See Chimenti v. Kimber, Civil No. 3:CV-01-2073, slip opinion at 11 (M.D. Pa. March 15,

2002)(Vanaskie, Chief Judge).  (A copy of which is attached hereto as Ex. "D")

   7.  In his Amended Complaint, prepared by counsel, Plaintiff likewise fails to alleged that

he has fully and completely exhausted his administrative remedies.  In this new version of his Complaint,

Plaintiff alleges, rather, that he has "filed grievances relating to this Complaint and completed the

process to the greatest extent possible."  (Ex. "B", at ¶4)  Plaintiff fails to allege that he has, in fact,

exhausted the available administrative remedies.  Likewise, Plaintiff fails to allege in his Amended

Complaint that he pursued any administrative remedies as against the moving defendant, Dr. Smith.

Given Plaintiff's present representation by counsel, the foreknowledge of the arguments made here by

virtue of the original Motion to Dismiss, and the fact that his Amended Complaint was prepared by

counsel who is more than knowledgeable in §1983 litigation, the failure to make these basic allegations

is even more telling.  Plaintiff has failed to allege that he had fully and adequately exhausted his

administrative remedies as to moving defendant, Smith, and accordingly, his Amended Complaint

should be dismissed.

   8.  Second, Peay's allegations fail to adequately allege a claim for deliberate indifference

pursuant to 42 U.S.C. §1983.  Peay fails to allege that he is suffering from any particular medical

condition, let alone a serious medical condition within the meaning of §1983.  To establish a serious

medical need he must plead a condition of urgency, one that may produce death, degeneration or

extreme pain.  See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326,

346 (3d Cir. 1987) cert. den., 486 U.S. 1006 (1988).  In his original Complaint, Peay asserts that he

has submitted written requests for medical treatment because "I may have been drugged and raped" but that "I wasn't clear on whether or not I was actually drugged and raped." (Ex. "A", at page 5) In his Amended Complaint, again, prepared by counsel instead of the Plaintiff himself, the Plaintiff's recollection of events have now somehow, miraculously coalesced, and he asserts that he "was drugged and sexually assaulted" by his cellmate in August, 2001. (Ex. "B", at ¶17)

9.     Next, a review of his original Complaint revealed that Peay had failed to aver facts sufficient to establish that the defendant, Smith, acted with deliberate indifference to a serious medical need, as required by 42 U.S.C. §1983. No indication exists from Peay's Complaint that Dr. Smith knew that his alleged conduct presented a substantial risk of harm to Peay. At best, Peay alleges a disagreement with the choice of medical care he has received from moving defendant. Peay concedes by his allegations that, in fact, he has received medical treatment, but that he believes that more should be done or that he should receive more or other testing procedures. A mere disagreement with the choice of medical treatment or testing does not state a claim under §1983.

**WHEREFORE**, moving defendant, Ralph Smith, M.D., respectfully requests that this

Honorable Court grant his Motion to Dismiss, and dismiss Plaintiff, Peay's Complaint against him.

Respectfully submitted,

GOLD, BUTKOVITZ & ROBINS, P.C.

BY: _____

ALAN S. GOLD
SEAN ROBINS
Attorneys for Defendant,
Ralph Smith, M.D.

7837 Old York Road
Elkins Park, PA  19027
(215) 635-2000

DATE:_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

STRATTON NEAL PEAY,                          :
                                                       CIVIL ACTION
              vs.                            :    NO. 02-2688

SUPERINTENDENT DONALD VAUGHN,
JULIE KNAUER, RALPH W. SMITH,                :
SGT. THOMAS and CORRECTIONAL
HEALTH CARE, INC.                            :


BRIEF IN SUPPORT OF
MOTION TO DISMISS OF DEFENDANT,
<u>RALPH W. SMITH, M.D.</u>

## I. <u>INTRODUCTION</u>

Plaintiff, Stratton Neal Peay ("Peay"), commenced this matter with the filing of a Complaint, on

or about September 13, 2002, a true correct copy of which is attached hereto as Ex. "A".  Peay's

Complaint is handwritten and very difficult to read.

Peay, an inmate at the State Correctional Institution at Graterford, Pennsylvania ("SCI-

Graterford") has filed a Complaint alleging claims pursuant to 42 U.S.C. §1983, including claims

against defendant, Smith, a physician at SCI-Graterford, as well as against Vaughn, Superintendent at

SCI-Graterford, Julie Knauer, the Health Care Administrator at SCI-Graterford, Graterford Prison,

The Department of Corrections of the Commonwealth of Pennsylvania, a correctional officer identified

as Sgt. Thomas, and an entity which Peay calls "The Medical Care Corporation for Graterford Prison."

(As to this last "entity," moving defendant, Smith, knows of the existence of no such entity named "The

Medical Care Corporation for Graterford Prison.")  In his Amended Complaint, he has changed the

named of this last defendant to "Correctional Health Care, Inc." and apparently dropped The

Department of Corrections.

Peay in his Complaint and his Amended Complaint, alleges a variety of claims against different defendants, relating to the alleged failure to provide him with medical care, to assure that he was provided with medical care, and to protect him from being physically and/or sexually assaulted in his prison cell.  (Exs. "A" and "B")[1]  For the reasons discussed herein, both Peay's Complaint and Amended Complaint fail to state a claim against moving defendant, Smith, pursuant to 42 U.S.C. §1983 for several reasons, and should be dismissed.

First, Plaintiff has failed to allege that he has fully and completely exhausted the available administrative remedies, pursuant to the Prison Litigation Reform Act, 42 U.S.C. §1997e(a).  Second, Peay's allegations fail to adequately allege a claim for deliberate indifference pursuant to 42 U.S.C. §1983, in that he fails to allege that he is suffering from a serious medical condition within the meaning of §1983, or any particular medical condition other than constipation.  And, third, Peay's Complaint should be dismissed because he fails to allege that Smith acted with deliberate indifference to a serious medical need, as also required by §1983.

As best can be told from Peay's original Complaint, he appears to allege that some time in

---

[1]    Both Plaintiff's original Complaint and his Amended Complaint are referenced herein, although the Amended Complaint supplants Plaintiff's Complaint in terms of being his the "active" complaint at this time.  In his Amended Complaint, Plaintiff attempts to avoid the consequence of several of the factual averments originally made in his Complaint by deleting those averments from the Amended Complaint.  Plaintiff's original Complaint, however, remains a part of the record in this matter, and his averments therein stand as judicial admissions.  For example, Plaintiff now suddenly is able to assert that he was, in fact, drugged and sexually assaulted by his cellmate, where, in his original Complaint, Mr. Peay frankly admitted that he could not tell one way or the other whether any sexual assault took place.

August, 2001, despite having "repeatedly asked Sgt. Thomas not to put the rape suspect in the cell that I was housed," he was placed in the cell with "the rape suspect" anyway, and that "I believe I've been drugged and raped." (Ex. "A", at page 4) Following this, Peay alleges that he submitted various requests to staff (DC-135A) in which he allegedly stated "I believe that I may have been drugged, and raped." In his Amended Complaint, Plaintiff makes similar allegations as to the correctional staff and his request not to be housed with his cellmate, but now, miraculously, his recollections thereafter have mysteriously coalesced in the seemingly firm knowledge that he was, in fact, "drugged and sexually assaulted" by his cellmate. (Ex. "B", at ¶17)

As to Dr. Smith, in his original Complaint Peay asserted only that following his submission of an inmate request to staff to Dr. Smith, "the medical director" contacted me. (Ex. "A", at page 4) Peay further alleges that Dr. Smith "didn't respond the way a medical director should respond." Peay alleges that after informing Smith via the DC-135A, submitted on February 15, 2002, that "I may have been drugged and raped", Smith responded in writing, and instructed Peay to "sign up for sick call." Peay further alleges that he had "already signed up for sick call" on various other occasions "[a]nd they haven't responded properly. Not as far as I'm concerned." (Ex. "A", at page 5) Peay asserts that "I didn't receive the medical treatment, nor care, that I was required to receive," although he fails to assert what care he believes he should have received that he did not receive.

Again, in the re-worked Amended Complaint, Plaintiff now asserts as to Dr. Smith, that he "reported the sexual assault to defendant Vaughn and to Defendant Dr. Smith and requested an investigation." (Ex. "B", at ¶18) He asserts that "[n]o investigation took place" (Ex. "B", at ¶19) Plaintiff, however, fails to allege that Dr. Smith, a member of the medical department, has any

3

responsibility for conducting an investigation of an inmate's allegations of criminal assault by another inmate.  There exists no reason to believe, nor any averment contained in the Plaintiff's Complaint or Amended Complaint, to support the conclusion that Dr. Smith, or any other medical personnel, have a duty to perform what is in essence a criminal investigation, or to require, control or direct prison correctional or administrative authorities to perform such a criminal investigation.  Further, it is telling that in his new Complaint, Plaintiff is trying to avoid the consequence of his original admission that Dr. Smith's sole contact with his alleged injuries from the alleged sexual assault was in the form of being sent an inmate's request form.  He alleged that Dr. Smith responded by directing him to sign up for sick call, but that he (Peay) did not believe Smith's response was what it should have been.  Again, in his Amended Complaint, Peay tries to compensate for this damning admission by simply not making it.  It's part of the record, its part of Peay's sworn pleadings, it constitutes a judicial admission, and it stands.

Peay further admitted in his original Complaint that "I wasn't clear on whether or not I was actually drugged and raped.  I woke up and didn't feel right.  This happened in August of 2001.  I'm still not clear on what happened."  (Ex. "A", at page 5)  Therefore, Peay is alleging that an incident for which he wishes treatment may or may not have occurred.  Peay states that he is seeking additional treatment or testing to find out what (or if) something is wrong with him, stemming from an alleged drugging and raping in his prison cell by his cellmate, an incident which, according to Peay, may or may not have happened.  The Amended Complaint attempts to escape the effect of Plaintiff's original, sworn averments, as contained in his original Complaint, but cannot.  They stand a part of the record as judicial admissions which the more vague averments of the Amended Complaint cannot supplant.

The only specific medical problem that Peay hinted at in the original Complaint was that "I'm

unable to move my bowels."  Peay does not state how frequent his "constipation" is, whether it is

occasional or frequent, how it is relieved and so forth.  He states that, given a complaint of constipation,

he wants to be sent to an outside hospital and have a "substantial test ... run on my abdomen as a

whole, rectum, and etc. to determine what my problems are."  (Ex. "A", at page 3)  Peay alleges that

Dr. Smith promised that an MRI and/or endoscopy would be performed by that it has not yet been

performed.  (Ex. "A", at page 3)  Accordingly, Peay alleges that he thinks he is suffering from some

medical condition which may have resulted from being drugged and raped by a cellmate, which incident

may or may not have occurred, although the only specific complaint that he makes is that he is "unable

to move [his] bowels."

In the Amended Complaint, Plaintiff now alleges that shortly after he was subjected to what he

now seems to believe was, in fact, a drugging and sexual assault by another inmate, "Peay began to

experience abdomen problems including a bleeding rectum, constipation, stomach pain and nausea."

(Ex. "B", at ¶20)  Plaintiff now alleges that he "repeatedly requested treatment for these problems but

was denied by Defendant Dr. Smith and Defendant Julie Knauer."  (Ex. "B", at ¶21)  These allegations

relating to the medical problems Plaintiff is alleging to have suffered consequent to the alleged sexual

assault, are basically the same as those alleged in the original Complaint.  However, the only factual

averment of record concerning information provided allegedly to Dr. Smith concerning Plaintiff's alleged

injuries requiring treatment, remain from the original Complaint in which, as noted above, Plaintiff

alleged only that he submitted a written request to Dr. Smith in which he told him that he "may have

been drugged and raped," in response to which he was instructed to "sign up for sick call."  (Ex. "A", at

page 5)  There are no other allegations that Dr. Smith was told anything more about Plaintiff's alleged

5

medical condition.

In addition, in the Amended Complaint, the Plaintiff now alleges that during some unspecified time period, he has suffered from "mental anguish and has had suicidal thoughts," and that he "has not received adequate treatment for his mental problems ...." (Ex. "B", at ¶¶25-26. Plaintiff, however, makes no allegations that Dr. Smith had any knowledge of these alleged "mental problems," what these alleged "mental problems" may have been, whether he ever presented these alleged "mental problems" to Dr. Smith, and what response he received if indeed he ever presented these alleged "mental problems" to Dr. Smith. In essence, in his Amended Complaint, Plaintiff has tossed in a few references to "mental problems" but has failed to allege any particulars as to what those problems might have been, how they have manifested, when they have manifested, or any information as to whom he requested treatment, when he requested treatment, or any information that ties these vagaries to Dr. Smith. In the absence of any information whatsoever, it is not possible to conclude that Plaintiff's ethereal "mental problems" constitute a serious medical need for purposes of 42 U.S.C. § 1983.

## II. LAW AND DISCUSSION

**A.    PLAINTIFF, PEAY, HAS FAILED TO ALLEGE IN HIS COMPLAINT THAT HE HAS FULLY AND ADEQUATELY EXHAUSTED THE AVAILABLE ADMINISTRATIVE REMEDIES, AS REQUIRED BY 42 U.S.C. §1997e(a), AND HIS COMPLAINT MUST THEREFORE BE DISMISSED.**

Plaintiff has failed to allege that he has fully and completely exhausted the available administrative remedies, pursuant to the Prison Litigation Reform Act, 42 U.S.C. §1997e(a), and therefore his claims should be dismissed.

The available administrative remedies for inmates in the Pennsylvania state prison system are set

forth in Department of Corrections Consolidated Inmate Grievance Review Procedure, ADM-804

(effective October 20, 1994; amended May 20, 1996, November 1, 1997 and May 1, 1998)  (See

Ex. "B")  As of the May 1, 1998 amendment, ADM-804 also provided for the award of monetary

damages at any level of the three-tiered administrative process.

     The Congress of the United States  has enacted legislation requiring all inmates in all prisons to

exhaust all available administrative remedies before they have the right to file a claim pursuant to 42

U.S.C. §1983 or the United States Constitution.  That statute, 42 U.S.C. §1997e(a), reads in relevant

part as follows:

> No action shall be brought with respect to prison conditions under
> Section 1979 of the revised statute of the United States (42 U.S.C.
> §1983) or any other Federal Law by a prisoner confined to any jail,
> prison, or other correctional facility until such administrative remedies as
> are available are exhausted.  42 U.S.C. §1997e(a).

     The Supreme Court of the United States in <u>Booth v.Churner</u>, 532 U.S. 731 (2001).  decisively

concluded that pursuant to 42 U.S.C. §1997e(a) an inmate had to exhaust all available administrative

remedies prior to filing any claim pursuant to the United States Constitution or any federal statute even if

the remedy provided failed to address the needs of the inmate and constituted an exercise in futility.

The Supreme Court rejected the so called futility exception to exhaustion.

     In <u>Geisler v. Hoffman</u>, 234 F.3d 1264 (2000)(unreported) the United States Court of Appeals

for the Third Circuit upheld the dismissal of the complaint of the plaintiff, an inmate, against a private

physician, Stanley Hoffman, M.D., based on 42 U.S.C. §1983 solely because of the failure of the

plaintiff to exhaust appellate administrative remedies.  In that case the plaintiff tried to excuse his failure

to exhaust by stating that he had filed two initial grievances concerning his lack of medical care and no

one had ever responded.  The Court indicated that he still had to exhaust his administrative remedies and that he should have utilized the appellate procedures provided for by the administrative remedies. A copy of the Court's opinion appears hereto as Ex. "E.[2]

The Court also held in Geisler, supra, that an inmate's refusal to seek monetary damages during all three levels of the administrative process constituted a failure to exhaust his administrative remedies and requires dismissal of the complaint.  That analysis applies here and requires the dismissal of Peay's complaint for failure to exhaust administrative remedies.

In Peoples v. Horn,  No. 3:97-0205 (M.D. Pa. 1997), attached hereto as Ex. "F", Judge Conaboy concluded that a complaint brought by an inmate for inadequate medical care based on 42 U.S.C. §1983 had to be dismissed for failure to exhaust administrative remedies.  Plaintiff, an inmate, contended that he had filed his Part 1 grievance but he was "put down via semantics, etc., etc., etc. And I was persecuted (sic) because of my efforts to obtain relief."  Judge Conaboy concluded that no indication existed in the complaint that he appealed the dismissal of his grievance.  Judge Conaboy held:

> In that connection, the procedure contemplates several tiers of review and the Grievance Review System is not exhausted when an inmate files a grievance and then takes no other action through established channels when a grievance is not resolved to his or her satisfaction.

Exhibit "F, pp. 3-4.  Judge Conaboy concluded that the failure to proceed with the appeals constituted a failure to exhaust available administrative remedies.  The Court dismissed the complaint without prejudice.  Ex. "F.

---

[2] Although the opinion of the United States Court of Appeals for the Third Circuit in Geisler, supra, fails to constitute binding authority because it is not reported, it has been submitted it to the Court because of its persuasive reasoning.

8

The district court has the power to take judicial notice of the fact that the Pennsylvania Department of Corrections had in place at the time of the alleged facts giving rise to the incident set forth in Peay's Complaint a consolidated inmate grievance system available to all state prisoners. See Federal Rule of Evidence 201(b); <u>Peters v. Delaware River Port Auth.</u>, 16 F.3d 1346, 1356 n. 12 (3d Cir. 1994); see also, <u>City of Pittsburgh v. West Penn Power Co.</u>, 147 F.3d 256, 259 (3d Cir. 1998)(finding that to resolve 12(b)(6) motion, court may properly look at public records...in addition to allegations in complaint). <u>Sykes v. Horn</u>, Civil Action No. 99-6208 (E.D. Pa. March 21, 2000)(Judge Robreno), Ex. "G".

Many federal courts have required an explicit statement of exhaustion of administrative remedies. The failure to do this has resulted in dismissal of the complaint. The reason many federal courts have taken this approach is because of the strong statement from Congress when it enacted 42 U.S.C. §1997e(a) that it desired the utilization of administrative remedies before the filing of a suit in federal court.

In <u>Brown v. Toombs</u>, 139 F.3d 1102, 1103-4 (6th Cir.) <u>cert</u>. <u>den</u>., 119 S.Ct. 88 (Oct. 5, 1998) the United States Court of Appeals for the Sixth Circuit concluded that because of the plain mandatory language of the statute requiring exhaustion of remedies and the legislative purpose underlying the plain language prisoners filing §1983 cases would have to allege and show that they had exhausted all available administrative remedies to survive a motion to dismiss. The reasoning of that case constitutes persuasive authority for this Court to dismiss Peay's Complaint.

While Peay contends that he submitted certain grievances on certain dates, he fails to allege that any of those grievances were fully exhausted through the three levels provided for by the Department of

Corrections policy DC-ADM804. (Ex. "B") Peay alleges that he filed grievances on eight (8)

occasions, between August 23, 2001 and April 25, 2002. Peay, however, provides no information as

to the status of any of these grievances, and there is no information from which it could be concluded

that he took any of these grievances beyond the initial filing. Further, it is unclear from Peay's

Complaint that defendant, Smith, was even the a subject of any of these grievances. Likewise,

Plaintiff's Amended Complaint fails to clear up this question: there are no averments whatsoever that

Plaintiff pursued any administrative remedies as against Dr. Smith, or that he completed the grievance

process as to any complaints whatsoever.

Finally, at no time does Peay indicates that in any of his grievances, he requested a monetary

remedy. The Department of Corrections grievance procedure specifically provides an administrative

remedy for monetary damages. See DC-ADM804. The failure to exhaust the monetary damages

means that Peay has not exhausted his administrative remedies. See Chimenti v. Kimber, Civil No.

3:CV-01-2073, slip opinion at 11 (M.D. Pa. March 15, 2002)(Vanaskie, Chief Judge). (A copy of

which is attached hereto as Ex. "D")

Accordingly, neither Peay's original Complaint nor his Amended Complaint alleges that he has

properly and adequately exhausted his available administrative remedies before proceeding in his

federal civil right action. Particularly considering that Plaintiff is now represented by counsel well able

to properly frame the exhaustion of administrative remedies, the failure to do so is particularly

instructive: Mr. Peay has not alleged the full and complete exhaustion of administrative remedies,

particularly as to moving defendant, Dr. Smith, because he cannot.

**B.    PLAINTIFF, PEAY, HAS FAILED TO ALLEGED THAT HE SUFFERS FROM A SERIOUS MEDICAL CONDITION, OR ANY MEDICAL CONDITION OTHER THAN CONSTIPATION, AS REQUIRED UNDER 42 U.S.C. §1983, AND HIS COMPLAINT MUST THEREFORE BE DISMISSED.**

Peay's allegations in both his original and Amended Complaint fail to adequately allege a claim for deliberate indifference pursuant to 42 U.S.C. §1983.  To proceed with a claim under 42 U.S.C. §1983 for deliberate indifference to a serious medical need, Peay must establish the existence of both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  A medical need rises to the level of seriousness required under the Eighth Amendment if it has been diagnosed by a physician as mandating treatment or if it constitutes a condition so obvious that even a lay person would recognize the need to attention.  Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)  The serious medical need requirement contemplates a condition of urgency, one that produces death, degeneration, or extreme pain.  Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 106 (1988).  Not every illness or injury invokes Constitutional protection.  Id.

Federal courts have consistently held that conditions that fail to produce death, degeneration or extreme pain fail to rise to the level of seriousness necessary for purposes of 42 U.S.C.§1983.  See Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists not serious medical need); Johnson v. Vondera, 790 F.Supp. 898, 900 (E.D.Mo. 1992) (headaches, neck pain and blurred vision not serious medical needs);  Borrelli v. Askey, 582 F.Supp. 512, 513 (E.D.Pa. 1984) (slight visual impairment causing headaches and tension not serious medical need); Griffin v. DeRobertis, 557

11

F.Supp. 302, 306 (N.D.Ill. 1983) (aches and sore throats not serious medical needs under §1983);

Dickson v. Coleman, 569 F.2d 1310 (3d Cir. 1978) (headaches not serious medical need under

§1983); Rodriguez v. Joyce, 693 F.Supp. 1250 (D.Me. 1988) (broken finger not serious medical need

under §1983); Glasper v. Wilson, 559 F.Supp. 13 (W.D.N.Y. 1982) (bowel problems not serious

medical needs); Jones v. Lewis, 974 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw not

serious medical needs under §1983); Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988)

(kidney stone not serious medical need under §1983).  In Davidson v. Scully, 913 F.Supp. 1011

(S.D.N.Y. 1996), the Court held that tinnitus, which can be painful, was not a serious medical need:

"While this condition may very well be painful, it does not cause death, and Plaintiff has not adduced

sufficient evidence that his condition is degenerative or causes extreme pain."  Id. at 1015.

      Here, as discussed above, Peay alleges nothing in his original Complaint more specific or more

serious than "I'm unable to move my bowels."  While he asserts that he "believes" that he "may have"

been "drugged and raped" in his cell by his cellmate in August, 2001, he is not certain, and he is

"unclear" whether this actually occurred.  The only medical condition which he alleges to be suffering

from, even if the incident took place (and the Plaintiff himself does not know if it did), is that he now

suffers from constipation.  Peay alleges nothing more serious than constipation, and which this may be

unpleasant and it may be inconvenient from time to time, there exists nothing to support the conclusion

that this is or could constitute a serious medical condition under §1983.  His Amended Complaint does

not remedy this pleading problem.  Plaintiff alleges in his Amended Complaint only that subsequent to

the alleged sexual assault he "began to experience abdomen problems, including a bleeding rectum,

constipation, stomach pain and nausea."  (Ex. "B", at ¶20)  These averments likewise fail to state a

serious medical need.

Constipation does not cause death; it is not a degenerative condition and does not cause serious bodily injury. In view of the condition which courts have found do and do not constitute serious medical needs, it cannot be concluded that Constipation is a serious medical need. The Western District of New York, in Glasper v. Wilson, supra, specifically found that bowel problems fail to constitute a serious medical need. Likewise, a "bleeding rectum" could have resulted from innumerable causes, including the alleged male-on-male sexual assault, but in and of itself, does not state a condition which is degenerative, causes serious bodily injury, or is capable of producing death. Likewise, the very general complaints of stomach pain and nausea.

Here, Peay alleges a handful of vague and general symptoms which could stem from countless medical and non-medical origins, and none of which, apart or taken together, states a "serious medical need" within the meaning of 42 U.S.C. §1983. Plaintiff presents a few symptoms, but fails to present any coherent medical need which required treatment or, if Plaintiff is believed, the denial of treatment therefore would have constituted deliberate indifference to a serious medical need. Likewise, in regard to the new allegations that he suffered from some unspecified "mental problems," there is no indication as to what such problems might have been, what their cause might have been, or whether, when or what was reported to Dr. Smith concerning these alleged "mental problems." Plaintiff's Amended Complaint also fails to allege that Dr. Smith had any responsibility for providing the Plaintiff with psychiatric treatment, or that he in fact was in any way involved in providing psychiatric care to the Plaintiff or any other inmates. No serious medical need is apparent in the averments of Plaintiff's Complaint or his Amended Complaint. His Complaint must therefore be dismissed.

13

**C.    PLAINTIFF, PEAY, HAS FAILED TO ALLEGED THAT DEFENDANT, SMITH, KNEW THAT HIS ALLEGED ACTIONS CONSTITUTED A SUBSTANTIAL RISK OF HARM TO PEAY, AND THAT HE NEVERTHELESS ENGAGED IN THAT CONDUCT, AND THEREFORE HIS COMPLAINT MUST BE DISMISSED.**

A review of his Complaint reveals that Peay has failed to aver facts sufficient to establish that the defendant, Smith, acted with deliberate indifference to a serious medical need, as required by 42 U.S.C. §1983.

To state a cause of action pursuant to 42 U.S.C. §1983, Peay must allege deliberate indifference to a serious medical need. The United States Supreme Court has defined the deliberate indifference standard in its opinion in Farmer v. Brennan, supra, 114 S.Ct. 1970 (1994). According to the Supreme Court, deliberate indifference requires a showing that prison medical staff had subjective awareness of a substantial risk of harm to the prisoner. Justice Souter, writing for the majority stated:

> We reject [the] invitation to adopt an objective test for deliberate indifference. We hold...that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety...The official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 114 S.Ct. at 1979. (Emphasis added).

Thus, under Farmer, supra, 114 S.Ct. at 1979, Peay must show that Dr. Smith knew that he would cause harm to Peay by his conduct. An examination of the complaint establishes that Peay has failed to meet this burden. He has not pled anywhere in his complaint that Dr. Smith knew about any particular medical problem that he had and refused to act, or that he was subjectively aware that any such failure

14

to act subjected Peay to a substantial risk of harm.

Most of the federal courts to deal with the issue have interpreted <u>Farmer</u>, <u>supra</u>, to require that a plaintiff prisoner in order to state a cause of action for deliberate indifference specifically allege that the defendant physician knew that his failure to treat presented a serious risk of harm to the prisoner plaintiff. In <u>Brown v. O'Connor, M.D., et al.</u>, U.S.D.C. Eastern District of Pa, Civil Action No. 96-3149, Judge O'Neill concluded that an inmate who had alleged that a defendant physician had denied him treatment by means of a pillow for his neck and back pain failed to state a cause of action for deliberate indifference to a serious medical need. Judge O'Neill granted the motion to dismiss the complaint based on the failure of the plaintiff to allege that the defendant physician knew that his failure to treat the condition of the plaintiff created a serious risk of harm to the plaintiff. That analysis applies here and requires the dismissal of Peay's complaint.

Neither from the averments of Plaintiff's original Complaint, or his Amended Complaint, can it be concluded that Dr. Smith was are of any medical condition of the Plaintiff's which, if left untreated, was likely to result in death or serious injury. There are no averments from which it could be concluded that Dr. Smith knew that his actions regarding Peay's alleged medical complaints presented a substantial risk of harm. At best, Peay alleges a disagreement with the choice of medical care he has received from moving defendant. Peay concedes by his allegations that, in fact, he has received medical treatment, but that he believes that more should be done or that he should receive more or other testing procedures. A mere disagreement with the choice of medical treatment or testing does not state a claim under §1983.

Likewise, in Plaintiff's new allegations that he suffered from "mental problems," there are no

averments from which it could be concluded what any of these alleged "mental problems" might have been, how they manifested, what their causes were, or even whether any such problems were presented to Dr. Smith for treatment.  Likewise there are no averments that Dr. Smith had any responsibility for the provision of psychiatric treatment to the Plaintiff, or to any other inmates. Therefore, the Plaintiff's Amended Complaint fails to allege that the actions of Dr. Smith pertaining to these unspecified "mental problems" constituted deliberate indifference.  Further, there is no indication that Smith knew that his actions regarding any such unspecified complaints constituted a substantial risk of harm to the Plaintiff.

### III.  CONCLUSION

Accordingly, and for the reasons stated herein, moving defendant, Ralph Smith, M.D., respectfully requests that this Honorable Court grant his Motion to Dismiss, and dismiss the Complaint of Plaintiff, Stratton Neal Peay, as against him.

Respectfully submitted,

GOLD, BUTKOVITZ & ROBINS, P.C.


BY:    _____
ALAN S. GOLD
SEAN ROBINS
Attorneys for Defendant,
Ralph Smith, M.D.

7837 Old York Road
Elkins Park, PA  19027
(215) 635-2000

16

DATE:_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

STRATTON NEAL PEAY,                          :
                                                     CIVIL ACTION
            vs.                              :    NO. 02-2688

SUPERINTENDENT DONALD VAUGHN,
JULIE KNAUER, RALPH W. SMITH,               :
SGT. THOMAS and CORRECTIONAL
HEALTH CARE, INC.                            :


**O R D E R**

This matter having come before the Court upon the Motion to Dismiss Plaintiff's Amended

Complaint of Defendant, Ralph Smith, M.D.; and this Court having considered the submissions in

support of the motion; and having considered the submissions in opposition thereto; and for good cause

shown;

IT IS THIS _____ day of _____, 2002, hereby ORDERED, that the Motion

to Dismiss of defendant, Smith, is GRANTED, and Plaintiff's Amended Complaint as against Smith is

DISMISSED.


BY THE COURT:


_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

STRATTON NEAL PEAY,                       :
                                                     CIVIL ACTION
            vs.                           :    NO. 02-2688

SUPERINTENDENT DONALD VAUGHN,
JULIE KNAUER, RALPH W. SMITH,             :
SGT. THOMAS and CORRECTIONAL
HEALTH CARE, INC.                         :


**<u>NOTICE OF MOTION</u>**

TO:     Angus R. Love, Esquire
        Suite 523
        924 Cherry Street
        Philadelphia, PA 19107

        Notice is hereby given that defendant, Ralph Smith, M.D., has filed with the Clerk of the Court

a Motion to Dismiss the Amended Complaint of the Plaintiff, Stratton Neal Peay, along with Brief in

Support thereof, proposed form of Order, Notice of Motion, and Certificate of Service, on the date

given below.  Please be advised that you are required to respond to this

motion within the applicable time period set forth in the Federal Rules of Civil Procedure, and the Local

Rules of the United States District Court for the Eastern District of Pennsylvania.

GOLD, BUTKOVITZ & ROBINS, P.C.


BY: _____
ALAN S. GOLD
SEAN ROBINS
Attorneys for Defendant,
Ralph Smith, M.D.

7837 Old York Road
Elkins Park, PA  19027
(215) 635-2000

DATE:_____

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that the within Motion to Dismiss, Brief in Support of

Motion to Dismiss Plaintiff's Amended Complaint, proposed form of Order and Notice of Motion,

have been served upon the following, via U.S. mail, first class, postage prepaid on the date given

below.

Angus R. Love, Esquire
Suite 523
924 Cherry Street
Philadelphia, PA 19107

GOLD, BUTKOVITZ & ROBINS, P.C.

BY: _____

ALAN S. GOLD
SEAN ROBINS
Attorneys for Defendant,
Ralph Smith, M.D.

7837 Old York Road
Elkins Park, PA  19027
(215) 635-2000

DATE:_____