UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

STRATTON NEAL PEAY,       :
                                CIVIL ACTION
      v.                :   NO. 02-2688

SUPERINTENDENT DONALD VAUGHN,
JULIE KNAUER, RALPH W. SMITH,   :
SGT. THOMAS and CORRECTIONAL
HEALTH CARE, INC.             :

BRIEF OF RALPH W. SMITH, M.D. IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Stratton Neal Peay ("Peay"), an inmate at the State Correctional Institution at

Graterford (SCI-Graterford) has filed an Amended Complaint against Ralph W. Smith,

M.D. ("Smith")  Superintendent Donald Vaughn, Julie Knauer, Sgt. Thomas and

Correctional Health Care, Inc. contending that they engaged in various violations of the

Eighth Amendment of the United States Constitution by failing to investigate properly

and treat allegations of sexual assaults and by failing to provide appropriate medical

care to him, a copy of the Amended Complaint is attached hereto as Ex. "A".  While

incarcerated at S.C.I., Peay contends that another inmate drugged and sexually

assaulted him in August 2001.  See "Ex. "A" Complaint, ¶17.  He alleges that he

reported the sexual assault to Vaughn and to Smith and requested an investigation.  See

Ex. "A" ¶18

After the assault Peay asserts that he began to experience abdomen problems

including a bleeding rectum, constipation, stomach pain and nausea. Ext. "A", at ¶20.  In

his deposition , Peay admits that he suffered many of these symptoms before the

assault.  Deposition of Peay at page 19, Ex. "G"  Peay asserts that he requested

treatment from Smith but was denied it.  (See Exhibit "A", ¶21). In November 2001, prison officials removed him to the restricted housing unit ("RHU") for disciplinary reasons.  (Exhibit "A", ¶22)  Prison officials released him from the RHU in March 2002 but returned him in June 2002 for disciplinary reasons.  (See Ex. "A", ¶23).

Peay contends that he did not receive adequate treatment for his mental problems (Exs. "A", ¶25 and 26).  He asserts that Smith engaged in deliberate indifference towards his abdominal problems in violation of the Eighth Amendment of the United States Constitution and engaged in deliberate indifference to his mental problems in violation of the Eighth Amendment of the United States Constitution.  (See Exs. "A", ¶31 & 32.)    Peay also contends that Smith placed Peay in RHU.  (Exhibit "A", ¶33)

Smith seeks summary judgement on three different grounds, each of which independently supports his motion.  First, Smith seeks summary judgement based on the failure of Peay to submit sufficient evidence to support a jury verdict in his favor on the issue of deliberate indifference to a serious medical need.  The Supreme Court of the United States in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994) defined deliberate indifference for purposes of a cause of action brought pursuant to 42 U.S.C. §1983 as requiring subjective knowledge by a medical professional that his conduct or lack of conduct presented a substantial risk of serious harm to the plaintiff.  Subjective knowledge on the part of the defendant must exist.

Here no evidence exists of such subjective knowledge.  Smith provided constant care to Peay as shown by the medical records See Ex. "B.  The medical records state that other doctors also examined Peay on a regular basis and came to the same conclusion concerning his care as did Smith.  See Ex. "B",  medical records

No indication exists that Smith ever knew that his conduct presented a substantial

risk of harm to Peay. No indication exists that his conduct did present a substantial risk of harm to Peay. No evidence exists that Peay received anything but superior medical care from Smith.

At best Peay presents a disagreement with the medical care he received. He demands surgery. Smith and the other doctors that treated him state that he does not need surgery and that no basis exists for performing surgery upon him. Thus, Peay only sets forth a difference of opinion with Smith. At best he alleges negligence not deliberate indifference. Negligence never establishes a cause of action pursuant to 42 U.S.C. §1983. See Daniels v. Williams, 474 U.S. 327 (1986). Disagreement with medical care fails to support a cause of action based on deliberate indifference. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979).

A second reason exists which requires the granting of Smith's Motion for Summary Judgement. Peay has failed to present sufficient evidence of a serious medical need. To establish a serious medical need in the factual situation presented by Peay's claim, Peay must submit expert testimony concerning the seriousness of his condition. The conditions about which he complains fail to constitute the kind of problems about which a lay jury can determine on its own whether the level of seriousness required exists to state a cause of action pursuant to the Eighth Amendment of the United States Constitution. In Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987) the United States Court of Appeals for the Third Circuit held that a plaintiff prisoner complaining about medical care based on the Eighth Amendment failed to state a claim sufficient to support a jury verdict when he did not present expert testimony concerning whether a hernia constitutes a serious medical condition. That analysis applies here and requires the granting of summary judgement to Smith. Peay has no

expert testimony.

A third reason exists which requires the granting of summary judgement to Smith. Peay has not established his exhaustion of administrative remedies pursuant to 42 U.S.C. §1997e(a). The Department of Corrections of the Commonwealth of Pennsylvania provides a three-tiered procedure for complaints of inmates relating to medical care. The procedures appear at DC-ADM804. A copy of those procedures are attached as Ex. "C". Pursuant to those procedures an inmate may include a request for compensation. An examination of the grievances of Peay show that he has never sought compensation pursuant to the administrative process.

The majority of courts to deal with this issue have concluded that the failure to seek compensation through the administrative process constitutes a failure to exhaust administrative remedies and results in the granting of summary judgement to the defendant or the dismissal of the complaint. See Amey v. Rush N.o. 3:CV-02-1493 (M.D. Pa. 2003) (Nealon, J.); A copy of the opinion appears hereto as Ex. "D". See Still v. Department of Corrections, et al., N.o. 4: CV-01-2287 (M.D. Pa. 2002) (Jones, J); A copy of this opinion appears hereto as Ex. "E".

## II. STATEMENT OF UNCONTESTED FACTS

On October 10, 2002 in response to the referral from Dr. Smith, Michael Zappitelli, D.O. ("Dr. Zappitelli") conducted various diagnostic tests upon Peay including a barium enema. The test results showed no obstruction of the colon and nothing seriously wrong with the abdomen of Peay. See Report of Zappitelli attached hereto as Ex. "F" Peay admits that Dr. Zappitelli performed these tests. He concedes that Dr. Zappitelli's diagnosis showed that there was no obstruction of the colon. See

Deposition of Peay at page. 45, Ex. "G"

Despite this test Peay still asserts that he needs surgery due to an obstruction of his abdomen.  He also contends that Dr. Smith should authorize that surgery.  See Ex. "G", at page. 39

Peay contends that Dr. Smith had something to do with him being raped.  See Ex. "G", at pages 35 & 36 This allegation fails to appear in the Amended Complaint. See Ex. "A".  Peay admits he has no witnesses or evidence to prove this allegation. See Ex. "G", at pages 38 - 39

Peay concedes that he missed many medical appointments.  He blames the guards.  He has no evidence that Dr. Smith caused him to miss his appointments or knew that the guards had prevented him from appearing for medical treatment.  See Ex. "G", at page 49

Peay admits that Dr. Smith and other medical staff at SCI-Graterford have provided him with many different laxatives since August 2001.  They include Milk of Magnesia, Collace and Metamucil.  Ex. "G", at page 61

Peay concedes that Smith ordered numerous x-rays for him in an attempt to diagnosis his stomach problems.  Ex. "G", at page 76 But he feels that Smith did this so to attack his character.  He has no explanation as to how this attacked his character except to show that Peay had no stomach problems. Ex. "G", at page 76

An examination of the medical records of Peay show constant treatment provided to him by Dr. Smith and other doctors at SCI-Graterford.  He had numerous diagnostic tests.  No doctor found anything seriously wrong with Peay.  Peay has no information to show that he suffers from a serious problem with his stomach or any other area of his body for which he has not received treatment.  Ex. "G", at page 79 - 80

Peay has no evidence from any physician that indicates that he received inadequate treatment for any condition that he claims he had.  Peay has no evidence that any of the entries in his medical records are incorrect or incomplete.

On October 22, 2002, the medical records show that Dr. Smith met with Peay and discussed in detail his complaints.  Dr. Smith told him about the results of the barium enema.

On December 4, 2002, Dr. Dennis Iaccarino ("Dr. Iaccarino") examined Peay in detail.  A two page note appears in the medical records showing that he discussed all medical findings and tests with Peay.  Peay made it clear that he wanted surgery.  Dr. Iaccarino indicated that there was no medical indication for surgery at that time.  See Ex. "B"

Dr. Smith or other medical personnel saw Peay on November 26, December 7, December 8, December 9, December 14, December 18, and December 19 of 2001.  Ex. "B" No one found anything wrong with Peay.

On August 31, 2002, Dr. Iaccarino examined him again and ordered an abdominal x-ray.  The x-ray showed nothing wrong with Peay.

An examination of the x-ray report of November 9, 2001, shows that the abdomen demonstrated a normal intestinal gas pattern with no obstruction.  Dr. Peter G. Gregory, M.D. performed this study.  See Ex. "B medical records.  An x-ray report of April 25, 2002, shows the same results See Ex. "B

On March 4, 2002, Dr. Smith examined Peay and found nothing wrong with him.  On March 27, 2002, Mark Jaffe, D.O. examined Peay and found nothing wrong with him.  On June 6, 2002, Dr. Smith examined Peay and found nothing seriously wrong and provided treatment for the complaints that he had.  See Ex. "B" medical records

On May 8, 2002, Mark Jaffe, D.O. examined Peay again.  On June 12, 2002 a GI consult was ordered and performed.

On June 9, 2002, Dr. Iaccarino examined Peay and found nothing wrong with him.  On June 25, 2002, Dr. Smith examined him and provided appropriate treatment. On June 4, 2002 and July 4, 2002, Dr. Iaccarino again examined Peay and again found nothing seriously wrong with him.

At least two other doctors besides Dr. Smith have examined Peay on a regular basis and have agreed with the treatment prescribed by Dr. Smith.

An examination of the medical record show constant referrals to the Psychiatric Department of SCI-Graterford by Dr. Smith.  The Psychiatric Department subjected Peay to examination after examination and constantly monitored him.  At no time did Smith ever refuse Peay psychiatric treatment.  Peay had constant psychiatric treatment during his time at SCI-Graterford.

An examination of Peay's grievances that he submitted against Smith shows that he never asked for monetary damages at any level of the grievance procedure. DCADM-804, the regulation promulgated by the Department of Corrections of the Commonwealth of Pennsylvania for inmate grievances, provides for monetary damages.  See Exhibit "C".

### III. <u>ARGUMENT</u>

#### A.    <u>Standard To Be Utilized In Determining A Motion For Summary  Judgment.</u>

In 1986 the Supreme Court of the United States radically changed the standard for summary  judgment and in effect issued a directive to district courts to be more assertive in using this procedural tool to eliminate cases prior to trial.  As the Supreme

Court indicated in <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475

U.S. 574 (1986) once the party seeking summary judgment has pointed out to the

court the absence of a fact issue:

> ...its opponent must do more than simply show that there is
> a metaphysical doubt as to the material facts...In the
> language of the Rule, the non-moving party must come
> forward with 'specific facts showing that there is a genuine
> issue for trial'...where the record taken as a whole could not
> lead a rational trier of fact to find for the non-moving party,
> there is no 'genuine issue for trial'. 475 U.S. at 586-87.

Summary judgment must be granted unless the evidence construed in favor of

the non-moving party is sufficient for a reasonable jury to return a verdict for that party.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 243, 249-50 (1986). Granting summary

judgment is appropriate against "a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323

(1986).

The United States Court of Appeals for the Third Circuit in <u>Williams v. Borough of

West Chester, Pa.</u>, 891 F.2d 458 (3d Cir. 1989) recognized this drastic change in the

standard for summary judgment when it stated:

> Since the Supreme Court decided its summary judgment
> trilogy, appellate courts have increasingly been called upon
> to engage in difficult line-drawing exercises to determine
> whether a non-moving party has adduced sufficient evidence
> to defeat a motion for summary judgment. <u>Id</u>. at 459.

The Court in that case was faced with a situation where the plaintiff had

established a dispute as to a genuine issue of material fact. Yet, the Court of Appeals

upheld the district court's granting of summary judgment for the defendants. The Court

stated that although a dispute had been established, plaintiff had failed to show that he

could produce sufficient evidence to support a jury verdict in his favor.  In that case the

plaintiff claimed that the decedent had committed suicide while in the custody of the

West Chester police.  The decedent had previously been in the custody of the West

Chester police on prior occasions.  A police sergeant of the West Chester police

testified at his deposition that the decedent's suicidal tendencies were widely known at

the West Chester police department.  The specific defendants who were charged with

not taking appropriate precautions to prevent decedent's suicide denied knowing of the

tendencies.  No direct evidence was established that they did know of his suicidal

tendencies.  The defendant officers had served on a squad that had recorded the

bizarre behavior of the decedent.  The Court indicated that the question was whether

given the propensity of human beings to talk about bizarre behavior, a reasonable jury

could find that the defendant officers knew about decedent's suicidal tendencies and

whether the jury could find that they acted with deliberate indifference to the decedent's

psychological condition by not following the West Chester's police's normal policy

regarding belt removal.

     The United States Court of Appeals for the Third Circuit held that although the

case was extremely close it had to conclude that no reasonable jury could so find.  The

Court indicated that circumstantial evidence could not support the plaintiff's case

concerning a constitutional violation.  Judge Becker writing for the Court concluded:

> Although the line we draw today is, as I have said, not easy
> to place, the line must be drawn somewhere, and
> somewhere that adequately protects the salutary policies
> underlying Rule 56.  Of course the right to present one's
> claims to a jury provides competing, no less important
> policies to be considered, but the upshot of the Supreme

Court's <u>summary judgment trilogy is the former must not be
sacrificed entirely to the latter. The old scintilla rule,
although it would make cases like this one far easier to
decide, did just that. I concede, as I must, that plaintiffs
have adduced some circumstantial evidence tending to
show deliberate indifference. However, because the line we
must draw depends entirely on context and differences in
degree, 'some evidence is not necessarily enough to survive
summary judgment.</u> <u>Id</u>. at 891 F.2d at 466 (Emphasis
added).

Peay has failed to meet those standards. He has not submitted sufficient
evidence to support a jury verdict in his favor on any issue where he has the burden of
proof pursuant to his claim based on U.S.C. §1983. Peay has not shown that Smith
acted with deliberate indifference to his serious medical needs. He has not shown that
Smith possessed subjective knowledge that he created a substantial risk of harm to
Peay. Peay concedes that he received constant treatment from Smith. The medical
records show that he received constant treatment from other physicians. He disagrees
with the care he received. He alleges at best a claim of negligence. Negligence never
supports a cause of action pursuant to 42 U.S.C. §1983. <u>Daniels v. Williams</u>,474 U.S.
327 (1986).

**B.** **<u>Peay Has Failed To Submit Sufficient Evidence To
Support A Jury Verdict In His Favor Concerning His
Claim Pursuant To 42 U.S.C. §1983 Against Smith
Because He Has Not Submitted Sufficient Evidence To
Establish That Smith Acted With Subjective Knowledge
That His Conduct Or Omissions Presented A Substantial
Risk Of Harm To Peay.</u>**

To defeat the motion for summary judgement of Smith, Peay must show that he
has sufficient evidence to support jury a verdict in his favor on the issue of Smith having
had actual knowledge that his actions presented a substantial risk of harm to Peay.
Peay must make this showing in order to establish deliberate indifference to a serious

medical need.

The United States Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976) has

set forth the elements of a cause of action brought by a prisoner pursuant to 42 U.S.C.

§1983 raising allegations of the infliction of cruel and unusual punishment based on

medical care.  In upholding summary  judgment in favor of the defendant/doctor in that

case the Supreme Court stated:

> It suffices to note that the primary concern of the drafters
> was to prescribe 'tortures' and other 'barbarous methods of
> punishment'... it is safe to affirm that punishments of
> tortures...and all others in the same line of unnecessary
> cruelty, are forbidden by that amendment...We therefore
> conclude that deliberate indifference to the serious medical
> needs of prisoners constitutes the 'unnecessary and wanton
> infliction of pain'.  (citations omitted.)

<u>Id</u>. at 102-104.

Examples of the "unnecessary and wanton infliction of pain", which constitute

deliberate indifference provided by the Supreme Court consists of the following:

> ...doctors choosing the easier and less efficacious treatment
> of throwing away the prisoner's ear and stitching the stump
> may be attributable to deliberate indifference... rather than
> an exercise of professional judgment...injection of penicillin
> with knowledge that prisoner was allergic, and refusal of
> doctor to treat allergic reaction ...prison physician refuses to
> administer the prescribed pain killer and renders leg surgery
> unsuccessful by requiring prisoner to stand despite contrary
> instructions of surgeon.  (citations omitted.)

<u>Id</u>. at 104 f.n. 10.

In <u>Estelle v. Gamble</u>, <u>supra</u>, the United States Supreme Court rejected a

Constitutional claim based on medical malpractice, stating:

> Similarly, in the medical context, an inadvertent failure to
> provide adequate medical care cannot be said to constitute
> an 'unnecessary and wanton infliction of pain' or to be

'repugnant to the conscience of mankind'.  Thus a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.  Id. at 106.

The United States Supreme Court has most recently defined the deliberate indifferent standard in its opinion in Farmer v. Brennan, supra, 114 S.Ct. 1970 (1994). According to the Supreme Court, deliberate indifference now requires a showing that prison medical staff were "subjectively" aware of a substantial risk of harm to the prisoner.  Justice Souter, writing for the Court, stated:

We reject [the] invitation to adopt an objective test for deliberate indifference.  We hold...that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety...The official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 114 S.Ct. at 1979. (Emphasis added).

Thus, under Farmer, supra, 114 S.Ct. at 1979, Peay must show that Smith knew that he would cause harm to Peay by the conduct Peay contends Smith engaged in and yet Smith proceeded to act in such a way regardless.  An examination of the record in this case establishes that Peay has insufficient evidence to support a jury verdict on the issue of subjective knowledge by Smith concerning any conduct Peay alleges Smith engaged in presenting a substantial risk of harm to Peay.

What evidence has Peay presented that Smith knew that his conduct presented a substantial risk of harm to Peay?  Peay has presented no evidence on this issue at all, let alone sufficient evidence to support a jury verdict in his favor.  Peay contends that Smith should have recommended surgery for his problems with his abdomen and with his bowels.  Smith examined Peay repeatedly.  See Ex. "B" He consistently ordered x-rays.  All of the x-rays showed no serious problem with the stomach.  See Ex. "B"

Smith referred Peay to Dr. Zappitelli for various tests.  The barium enema conducted by Dr. Zappitelli showed no problem with the colon or abdomen.  See Ex. "F"

An examination of the deposition of Peay shows that he only complains about the type of treatment he received.  He disagrees with the treatment that Smith provided.  He admitted that he received treatment.  See Ex. "G"

An examination of the medical records shows that Dr. Iaccarino examined Peay on numerous occasions and concurred with the diagnosis of Smith.  He found nothing seriously wrong with Peay.  Ex. "B"

The medical records show that Dr. Jaffe examined Peay on at least two occasions and concurred with the diagnosis of Dr. Smith.  See Ex. "B"

An examination of the medical records shows that Smith referred Peay to the Psychiatric Department at SCI-Graterford on numerous occasions.  The Psychiatric Department constantly evaluated Peay.  Ex. "B"  Smith had the right to rely upon the psychiatrists evaluating Peay and their recommendations for treatment.  Smith at no time interfered with those recommendations.

Peay contends that Smith failed to investigate properly and treat allegations of

sexual assault.  He has produced no evidence on this issue.  No indication exists that Smith did not provide appropriate medical care to Peay.  An examination of medical records shows that he did.  See Ex. "B"  No indication exists that Smith had the ability to investigate a sexual assault.  Smith functioned as an independent contractor physician employed by a private corporation.  He did not have the ability to investigate complaints by one prisoner about misconduct by another.  Only prison officials had this authority.

Peay asserts that Smith placed him in the RHU.  Peay has no evidence to prove this.  Smith has no power to determine the housing assignments of inmates.  Smith had no ability to punish inmates.  He is a physician working for a private corporation.

An examination of Smith's verification shows that Smith did not have the subjective knowledge required to establish a violation of 42 U.S.C. §1983.  Smith indicates that he did not know that his conduct presented a substantial risk of harm to Peay.  Smith indicates in this verification that at all times he believes that he had provided appropriate medical care to Peay.  (See Ex. "H")

Here, Peay asked this Court to allow the jury to find the subjective knowledge required for deliberate indifference based solely on what Smith should have known.  This Court lacks the ability to do this without disregarding the directive of the Supreme Court of the United States in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1979 (1994).

Here Peay only presents a disagreement with the medical care he received.  A disagreement with the medical treatment provided fails to support a claim based on 42 U.S.C. §1983.  A prisoner's right to medical care fails to extend to the type of medical care which the prisoner personally desires.  Inmates of Allegheny County Jail v. Pierce,

612 F. 2d 754 (3d Cir. 1979) Prisoner complaints regarding the quality or appropriateness of medical care never support a claim of an Eighth Amendment violation.  <u>Monmouth County Correctional Institution Inmates v. Lanzaro</u>, 834 F2d 326, 346 (3d Cir. 1987) <u>cert</u>. <u>den</u>., 486 U.S. 106 (1988).  Here, Peay challenges the appropriateness of his medical care.  Thus, he fails to state a cause of action based on the Eighth Amendment as a matter of law.

The federal courts to consider the issue have even held that a disagreement between physicians failed to constitute deliberate indifference.  <u>See Douglas v. Stanwick</u>, 93 F.Supp. 2d, 325 (W.D.N.Y. 2000) (Difference in opinion between physicians concerning appropriate medical care for inmate fails to show deliberate indifference.)

In <u>Snipes v. DeTella</u>, 95 F.3d 586 at 590 (7th Cir. 1996) <u>cert</u>. <u>den</u>., 519 U.S. 1126 (1997) the United States Court of Appeals for the Seventh Circuit concluded:

> Physicians will disagree about whether a particular course of treatment is appropriate, or even if treatment is appropriate at all, but a disagreement in treatment alone will not support a constitutional violation.

The United States Court of Appeals for the Eighth Circuit in <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989) reached the same conclusion stating:

> A difference of opinion whether between an inmate and a physician or between physicians, does not give rise to an Eighth Amendment violation.

Even differing medical opinions among prison doctors does not support a claim of cruel and unusual punishment based on deliberate indifference to a serious medical need.  <u>Ramos v. Lamm</u>, 639 F.2d 559, 575 (10th Cir. 1980) <u>cert</u>. <u>den</u>., 450 U.S. 1041 (1981).  While evidence of disagreements between outside doctors and prison doctors

might be sufficient to overcome a summary judgment motion in a medical malpractice action even if proven such evidence fails to demonstrate deliberate indifference to a serious medical need.  <u>Sanders v. Vigil</u>, 917 F.2d 28, 1990 W.L. 160964 *2 (9th Cir. 1990). <u>Accord</u>, <u>Cruz v. Ward</u>, 558 F.2d 658, 662 (2nd Cir. 1977)(it is to be expected that prison physicians should sometimes disagree with the opinions of the hospital staff) <u>cert</u>. <u>den</u>., 434 U.S. 1018 (1978).  In <u>Gardner v. Zaunbrecher</u>, No. 95-CV-1543, 1996 W.L. 507072 *2 (N.D. N.Y. Sept. 4, 1996) the Court held that a disagreement among an inmate's physicians over a proper course of treatment did not show conscious or callous indifference to a serious medical need.

In <u>Stewart v. Murphy</u>, 174 F.3d 530 (5th Cir. 1999) plaintiff, the estate of an inmate, contended that while confined in prison the inmate received inadequate medical care for decubitus ulcers.  The estate contended that these ulcers ultimately caused the inmate's death.  The Court of Appeals concluded that the district court correctly granted summary judgment for the defendant physicians based on there being inadequate evidence to show subjective knowledge that their conduct presented a serious risk of harm to the plaintiff.

One of the defendant physicians transferred the decedent to a nearby non-prison hospital for consultation and treatment by a local surgeon, Dr. Wright.  Upon the decedent's return to the prison hospital the defendant/physician did not follow Dr. Wright's recommendations that the decedent be transferred to another facility for physical therapy.  Instead, the defendant/physician ordered that the decedent be kept out of bed as much as possible and that the nurses move his extremities.  The Court of Appeals concluded that even though the defendant physician did not follow Dr. Wright's

recommendations this suggested nothing more than a mere difference of opinion as to the appropriate method of treatment under the circumstances.

Here, Smith did follow the recommendation of the psychiatrist assigned to treat Smith at SCI-Graterford. He did not discontinue treatment. He did nothing to interfere with the psychiatric evaluations of the psychiatrists at SCI-Graterford.

The majority of federal courts to consider the issue have concluded that as long as prison authorities provide some treatment to an inmate, even if that treatment constitutes inappropriate care, the required subjective knowledge fails to exist to impose liability upon the healthcare professionals involved. In Holly v. Rapone, 476 F.Supp. 226 (E.D. Pa. 1979), Senior Judge Davis held:

> Denying plaintiff's Eighth Amendment claim I remain consistent with the ruling '[W]here the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim'. Roach v. Kligman, 412 F.Supp. 421, 525 (E.D. Pa. 1976). Quoting approvingly in Norris v. Frame, supra, 585 F.2d at 1185.

Id. at 231.

In Smith v. Marcantonio, 910 F.2d 500 (8th Cir. 1990) plaintiff, an inmate, alleged that prison officials violated his constitutional rights by engaging in conduct deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the United States Constitution. According to the plaintiff he needed more pain killing medication than Bowers, the prison doctor, was willing to dispense. The plaintiff also disagreed with the frequency of his bandage changes. He blamed Dr. Bowers for a one week delay in his first check up at the University Hospital. The United States Court of Appeals for the Eighth Circuit held that the plaintiff had failed to state a cause of action:

> Because Smith's complaints represent nothing more than

mere disagreement with the course of his medical treatment, he has failed to state an eighth amendment claim of deliberate indifference.  Id. at 910 F.2d at 502.

In Rodriguez v. Joyce, 693 F.Supp. 1250 (D.Me. 1988), the court granted a motion for summary judgment in a factual situation similar in all important respects to the one now before this Court.  In that case, the plaintiff, a prisoner, alleged that he injured his finger while playing volleyball.  When he sought medical treatment from employees of the prison, where he served as an inmate, he received aspirin for the pain.  The medical personnel at the prison never took an x-ray.  The plaintiff contended that he had fractured his finger.  He maintained that the failure of the medical personnel at the prison to take the x-ray resulted in his receiving inadequate medical care.  The court, in granting the motion for summary judgment, stated:

> But, as the Supreme Court clearly stated in Estelle, merely questioning the form of medical treatment does not constitute a cognizable section 1983 claim.  Plaintiff has alleged nothing more than negligent diagnosis.  A decision whether or not to order an x-ray 'is a classic example of a matter for medical judgment.  A medical decision not to order an x-ray, or like measure, does not represent cruel and unusual punishment.' Estelle, (citation omitted.)  This is quite apt in the context here, where the claim involves only a mere injury to a finger joint.  The failure of the nurses to order an x-ray of plaintiff's injured finger is not cruel and unusual punishment.  Our holding here is consonant with the approach towards preventing section 1983 from becoming a national state tort claims act administered in the federal courts.  Quoting Estate of Bailey v. County of York, 768 F.2d 503, 513 (3d Cir. 1985) (Adams, J., dissenting).

Id. at 693 F.Supp. at 1253.

Peay has failed to establish deliberate indifference.  Insufficient evidence exists to support a jury verdict.  Smith has established his right to summary judgement on this issue.

C.    **Peay Has Failed To Establish Sufficient Evidence To
Support A Jury Verdict In His Favor On The Issue Of A
Serious Medical Need Since He Has Not Submitted
Expert Testimony On This Issue.**

_____In order to state a cause of action based on 42 U.S.C. §1983 Peay must show

sufficient evidence to support a jury verdict in his favor on the issue of a serious

medical need.  Monmouth County Correctional Institution Inmates v. Lanzaro supra 834

F.2d at 346.  To establish a serious medical need Peay must present expert testimony

indicating that the condition about which he complains rises to the level of a serious

medical need.  The United States Court of Appeals for the Third Circuit in Boring v.

Kazakiewicz 833 F2d 468 (3rd Circ. 1987) reached this conclusion.  It expressly held

that the plaintiff inmate had to produce expert testimony on the issue of whether a

hernia constitutes a serious medical need.  The Court indicated that the jury lacked the

ability to determined whether a hernia rose to the level of a serious medical need

without expert testimony.  The Court dismissed the plaintiff's claim even though the

plaintiff contended that he lacked the ability to afford an expert.  The Court held the

inability to pay for an expert did not excuse the requirement

_____The Court noted that the only exception to the rule requiring presentation of

expert testimony on the issue of serious medical need arose when the jury could

determine from its own general knowledge that the medical condition involved rose to

the level of a serious medical need.  The Court concluded that neither a hernia nor a

migraine constituted such conditions.  Boring supra. 833 F.2d 468.

The analysis of the United States Court of Appeals for the Third Circuit in Boring

supra. 833 F.2d 468 applies here and controls.  The conditions about which Peay

complains failed to fit into the exception to the requirement of expert testimony

mandated by the United States Court of Appeals for the Third Circuit in <u>Boring</u>.  These conditions do not rise to the level of obviousness sufficient to permit a jury to make a determination without the aid of expert testimony.  Consequently, Peay has failed to submit sufficient evidence to withstand a motion for summary  judgement on the issue of a serious medical need.

**D.     Peay Has Failed To Exhaust His Administrative Remedies Provided To Him By The Department Of Corrections Of The Commonwealth Of Pennsylvania Since He Has Not Sought Monetary Damages During The Administrative Process.**

The United States Congress requires that all inmates bringing causes of action based on 42 U.S.C. §1983 exhausts all available state administrative remedies.  42 U.S.C. §1997e (a) provides:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Department of Corrections of the Commonwealth of Pennsylvania has a consolidated inmate grievance review, DC-ADM804. A prisoner, in seeking review through the grievance system, may include requests for "compensation or other legal relief normally available from a Court", (DC-ADM804-4) issued April 29, 1998 (Ex. "C")

An examination of the grievances submitted by Peay shows that he never at any stage of the grievance procedure sought compensatory damages.  The majority of courts to consider the issue have concluded that the failure to utilize the right to seek compensatory damages results in dismissal of the complaint for failure to exhaust the available administrative remedies.

The United States Court of Appeals in <u>Geisler v. Hoffman</u>, 234 F.3d 1264 (2000) in an unreported opinion held that an inmate who had exhausted his available administrative remedies through all three-tiers of the grievance procedure but had not asked for monetary damages failed to exhaust his administrative remedies as a matter of law and had violated 42 U.S.C. §1997e(a).  All though this decision has no precedential value, Smith presents it for his persuasive reasoning and because several district courts have relied upon it to reach the same conclusion.  In <u>Amey v. Rush</u> 3:C.V.-02,1493 (M.D. Pa. 2003) Judge Nealon of the United States District Court for the Middle District of Pennsylvania held that a plaintiff inmate who did not seek compensatory damages through the administrative system provided by the Department of Corrections of the Commonwealth of Pennsylvania failed to exhaust his administrative remedies Judge Nealon dismissed the claim.  (See Ex. "D")

In <u>Still v. Department of Corrections</u>, et al. No. 4:CV-01-2287 (M.D. Pa. 2002) Judge Jones of the United States District Court for the Middle District of Pennsylvania held that an inmate plaintiff who failed to seek compensatory damages through the administrative process failed to exhaust administrative remedies. Judge Jones dismissed the Complaint.

Consequently, Peay has failed to exhaust his administrative remedies.

## IV.  CONCLUSION

_____In light of the foregoing Smith respectfully requests that his Motion for Summary judgement be granted.

GOLD, BUTKOVITZ & ROBINS, P.C.

BY:_____/s/   Alan S. Gold_____
         ALAN S. GOLD
         Attorney for Defendant,
         Atty I.D. # 23400
         Ralph Smith, M.D.
         7837 Old York Road
         Elkins Park, PA 19027
         (215) 635-2000


DATE:__August 15, 2003____

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that I have served a true and correct copy of the Motion for Summary judgement on this date by U.S. mail, first class, postage pre-paid on this date to the following individuals:

Angus R. Love, Esquire
Suite 523
924 Cherry Street
Philadelphia, PA 19107

Patrick J. McMonagle, Esquire
Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603


GOLD, BUTKOVITZ & ROBINS, P.C.


BY:___/s/  Alan S. Gold_____
ALAN S. GOLD
Attorney for Defendant,
Ralph Smith, M.D.
7837 Old York Road
Elkins Park, PA 19027
(215) 635-2000


DATE:  August 15, 2003___