Not Reported in F.Supp.                                                                                          Page 1
(Cite as: 1997 WL 43015 (E.D.Pa.))

Bilal A. MUHAMMAD, Plaintiff,
v.
Dr. Arnold SCHWARTZ, Dr. John Roeder and
Dr. Josey Malabranch, Defendants.

Civil Action No. 96-CV-6027.

United States District Court, E.D. Pennsylvania.

Jan. 27, 1997.

Bilal A. Muhammad, Graterford, PA, Pro Se.

Alan S. Gold, Monaghan & Gold, P.C., Elkins Park, PA, for Defendants.

MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

I. INTRODUCTION

*1 On August 29, 1996 Plaintiff Bilal A. Muhammad filed a complaint against Dr. Arnold Schwartz, Dr. John Roeder, and Dr. Josey Malabranch pursuant to 42 U.S.C. § 1983 alleging cruel and unusual punishment via deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Mr. Muhammad also asserts a Pennsylvania state law claim of medical malpractice. This court has jurisdiction via §1983, and through our assertion of pendent jurisdiction over the state law claim per 28 U.S.C. § 1367.

In their instant motion, Dr. Schwartz and Dr. Roeder request that the action against them be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Dr. Malabranch was never properly served; the complaint against her is therefore dismissed without prejudice. The issue before us consists solely of whether Mr. Muhammad alleged sufficient facts within his complaint to support his § 1983 action against Dr. Schwartz and Dr. Roeder.

II. DISCUSSION
A. Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this court must dismiss a complaint if it fails to state a claim upon which relief can be granted. A complaint should not be dismissed for failure to state a claim unless the plaintiff has alleged no set of facts in support of his claim which would entitle him to relief. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Haines v. Kerner, 404 U.S. 519, 520 (1972). This court's inquiry is essentially limited to the content of the complaint. Biesenbach v. Guenther, 588 F.2d 400, 402 (3d Cir.1978). All allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996); Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir.1993). However, "we are not required to accept legal conclusions either alleged or inferred from the pleaded facts." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993). Further, if "the facts alleged in the complaint, even if true, fail to support the ... claim," we must dismiss the complaint. Id. (citing Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988). In a Section 1983 action, a motion to dismiss will be granted if the plaintiff does not sufficiently allege in his complaint the deprivation of any right secured in the Constitution. Nami, 82 F.3d at 65.

B. Factual Allegations

We therefore review Mr. Muhammad's allegations as contained solely within his complaint in the light most favorable to him. Mr. Muhammad is currently incarcerated at S.C.I. Graterford Prison in Graterford, Pennsylvania. He states in his complaint that on December 19, 1994 at approximately 5:00 p.m. he was rushed to the dispensary with complaints of severe stomach and back pains. Complaint at 2. Mr. Muhammad was seen by Defendant Dr. Roeder, and complained to him that was vomiting and thought he had food poisoning. Mr. Muhammad alleges that Dr. Roeder then prescribed Donatol and Maalox to him; however, Dr. Roeder did not take "blood pressure readings and/or a finger stick for blood sugar reading along with temperature readings to determine whether infection was present." Complaint at 3. Mr. Muhammad alleges that his medical records indicated a pre-existing problem with diabetes, hypertension, and kidney stones. Id. In addition, he states that a nurse at the infirmary "attempted to convince

DEFENDANT'S EXHIBIT J

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp. 
(Cite as: 1997 WL 43015, *1 (E.D.Pa.))

Page 2

defendant Dr. Roeder that [he] had problems in the past dealing with kidney stones." Id. Mr. Muhammad does not allege that he suggested any alternative diagnosis to Dr. Roeder other than his initial complaint of food poisoning.

*2 Later on December 19, 1994, at approximately 8:00 p.m., Mr. Muhammad alleges that he was brought back to the dispensary to see Dr. Malabranch for vomiting and pains. After a discussion about Mr. Muhammad's concerns with his kidneys, Dr. Malabranch prescribed Demoral. Mr. Muhammad alleges that "at no time [were his] procedural vital signs taken by defendant Dr. Malabranch." Complaint at 5. Mr. Muhammad then returned to his cell; he states that he was in severe pain. He alleges that a nurse requested that he be sent to a hospital, but this request was denied at that time. Id.

At approximately 6:00 a.m. on December 20, 1994 Mr. Muhammad states that he applied for sick call for treatment "relating to his stomach and back pains" and vomiting. Complaint at 7. He was now seen by Dr. Schwartz, who prescribed Motrin for the pain and referred him to the Medical Director, Dr. Dennis Moyer. [FN1] Dr. Moyer ordered that x-rays be taken and placed Mr. Muhammad on medical layin from work. Mr. Muhammad returned to his cell and, being in pain, took the Motrin previously prescribed. Id.

> FN1. Dr. Moyer is not a defendant in this matter.

Two days later, on December 22, 1994, Mr. Muhammad signed up for "routine sick call" and was seen again by Dr. Schwartz. He complained of "severe back pains associated with kidney stone presence and intense chills, along with vomiting." Complaint at 7. Mr. Muhammad alleges that Dr. Schwartz did not take his blood pressure, but did prescribe Motrin. He also alleges that approximately one half hour later he "fell to the floor" and was brought to the dispensary. Complaint at 8. There, he was seen by Dr. Moyer. Mr. Muhammad's allegations are unclear subsequent to that, but it appears that he was admitted to Suburban General Hospital on December 24, 1994 with severe kidney problems.

C. Deliberate Indifference

1. Legal Standard

The gravamen of Mr. Muhammad's Section 1983 action is that Drs. Roeder and Schwartz subjected him to cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the states by the Fourteenth Amendment. See Robinson v. California, 370 U.S. 660 (1962). Because an inmate must rely on prison officials for their medical care, denial of same can result in pain and suffering that rises to the level of a constitutional violation. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). However, the law is clear that failure to provide adequate medical treatment is a violation of the Eighth Amendment only when it results from "deliberate indifference to a prisoner's serious illness or injury." Id. at 105.

The Supreme Court clarified this standard in Wilson v. Seiter, 501 U.S. 294 (1991). They held that "to establish an Eighth Amendment violation an inmate must allege both an objective element-- that the deprivation was sufficiently serious--and a subjective element--that a prison official acted with a sufficiently culpable state of mind, i.e. deliberate indifference." Nami v. Fauver, 82 F.3d 63, 67 (3d Cir.1996) (citing Wilson 501 U.S. at 304); Young v. Quinlan, 960 F.2d 351, 359-60 (3d Cir.1992). The first element requires that the doctor's act or omission "result in the denial of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994) ("the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm"). To be sure, Mr. Muhammad has alleged a very serious injury: that he suffered bilateral kidney failure. For purposes of this discussion only, we will accept that this is sufficient to satisfy the first element.

*3 However, it is not clear that he has alleged sufficient facts to show the second element: that Drs. Schwartz and Roeder acted with a sufficiently culpable state of mind. The Supreme Court has held that when a prison official commits an act or omission that does not purport to be "punishment," there must be more than an ordinary lack of due care; there must be deliberate indifference, or the "unnecessary and

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1997 WL 43015, *3 (E.D.Pa.))

Page 3

wanton infliction of pain." Estelle, 429 U.S. at 104; Whitley v. Albers, 475 U.S. 312, 319 (1985); Young v. Quinlan, 960 F.2d 351, 359 (3d Cir.1992). In Farmer v. Brennan, 114 S.Ct. 1970 (1994), the Supreme Court discussed "deliberate indifference" in more detail. It is clear that the required state of mind is more than negligence in diagnosing or treating a medical condition, but less than acts or omissions committed for the very purpose of causing harm or with the knowledge that the specific harm will result. Farmer, 114 S.Ct. at 1978. The Farmer court adopted subjective recklessness as the appropriate test, holding that a "prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Id. at 1979; see also, Nami, 82 F.3d at 67. If the official should have perceived a risk, but did not, his acts or omissions cannot establish a constitutional violation. Alleging obviousness or constructive notice is insufficient to state a claim because liability may not be prefaced on these alone, and if a prison official was not aware of even an obvious risk there can be no constitutional violation. Farmer, 114 S.Ct. at 1980, 1982.

In this light, it is clear that to establish his claim, Mr. Muhammad must allege facts that at a minimum show recklessness on the part of Dr. Schwartz and Dr. Roeder. [FN2] It is insufficient to allege that the doctors "misdiagnosed [his] condition, that [the doctors'] method of physical examination and treatment may not have followed community standards, or that [the doctors] disagreed with [his] suggested course of treatment." Bellecourt v. United States, 994 F.2d 427, 431 (8th Cir.1993), cert. denied, 510 U.S. 1109 (1994); see also Estelle, 429 U.S. at 106. Malpractice, while not condoned by this court, is simply not actionable under Section 1983. See Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir.1993); Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir.1989). Malpractice indicates negligence on the part of the physician, and "negligence in the administration of medical treatment is not itself actionable under the Constitution." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) (citing Estelle, 429 U.S. at 105); see also Jordan v. Fox, 20 F.3d 1250, 1277 (3d Cir.1994). Neither, certainly, is a disagreement between the plaintiff and the doctor on the medical diagnosis. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990). Because "there may, for example, be several ways to treat an illness," prison doctors have been accorded considerable latitude in the diagnosis and treatment of prisoners. Durmer, 991 F.2d at 67; Inmates of Allegheny County Jail, 612 F.2d at 762; White, 897 F.2d at 110.

> FN2. Some courts have held that because the element of deliberate indifference involves a discussion of intent, this sort of Eighth Amendment claim cannot be resolved at summary judgment; however, the complaint is certainly subject to dismissal for failure to state a claim if no such subjective intent is alleged in the first place. See Young 960 F.2d at 360.

*4 In finding deliberate indifference, courts have generally noted length of time without treatment, the types of complaints made by the prisoner, and the specific responses of the doctor. See Durmer, 991 F.2d at 67 (prisoner went over seven months without treatment, prisoner complained repeatedly of pain over that time, non-medical reasons given for denial); White v. Napoleon, 897 F.2d 103, 109 (3d Cir.1990) (well over ten different instances with several prisoners over many months, repeated complaints, direct comments and actions by doctor which indicate no medical purpose); Lanzaro, 834 F.2d at 347 ("deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates"). The Third Circuit specifically found that allegations that a doctor "intended to inflict pain on prisoners without any medical justification," or a large number of "specific instances in which the doctor insisted on continuing courses of treatment that the doctor knew were painful, ineffective, or entailed substantial risk of serious harm to the prisoners" were distinguishing factors of a case that went beyond mere malpractice. White, 897 F.2d at 109.

2. Discussion

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
(Cite as: 1997 WL 43015, *4 (E.D.Pa.))

Page 4

For Mr. Muhammad's claims of deliberate indifference, each doctor must be examined separately from the other. See Polk County v. Dodson, 454 U.S. 312, 325 (1981) (holding that because respondeat superior is not a basis for liability under § 1983, one doctor at a prison cannot be held liable for actions of others); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993). We will therefore examine Mr. Muhammad's allegations with respect to Dr. Roeder first.

Dr. Roeder saw Mr. Muhammad once, when he was first brought to the dispensary on December 19, 1994. Mr. Muhammad complained of stomach and back pains and indicated that he thought it might be food poisoning. Based on this, Dr. Roeder prescribed Donatol and Maalox for treatment of the pain and possible food poisoning, and returned Mr. Muhammad to his cell. Mr. Muhammad does not allege that Dr. Roeder was involved subsequent to this. He does allege that a Nurse, Connie Chubb, told Dr. Roeder about his history of kidney stones.

These allegations are insufficient, even when taken in a light most favorable to Mr. Muhammad, to make out a § 1983 action. Mr. Muhammad does not allege that Dr. Roeder actually knew that the prescriptions issued to Mr. Muhammad would cause further harm. He merely disagrees with the diagnosis, with the ease of twenty-twenty hindsight. He does not allege that Dr. Roeder knew that Mr. Muhammad faced the serious risk of kidney failure, and issued a prescription for Donatol and Maalox in reckless disregard for that risk. He merely states that a history of kidney stones and diabetes was listed in his medical records. This is not deliberate indifference per Farmer v. Brennan. Without alleging actual knowledge, any reference to obviousness via the medical records available, or what the doctor "should have known" is unavailing.

*5 Dr. Schwartz saw Mr. Muhammad twice. The first time was on the morning of December 20, 1996 at a "sick call screening." Mr. Muhammad alleges in his complaint that he had continued stomach and back pains, and vomiting. Dr. Schwartz prescribed Motrin to alleviate his pain, and referred him to the Medical Director, Dr. Moyer. Mr. Muhammad does not allege any conversation or discussion of his case between Dr. Schwartz and his supervisor, only that the doctor screened him, prescribed him medication for his pain, and referred him to the director.

Dr. Schwartz did not see Mr. Muhammad again until two days later, on December 22, 1994, when Mr. Muhammad signed up for "routine sick call." Dr. Schwartz listened to Mr. Muhammad's complaints, and again prescribed Motrin for his pain. Mr. Muhammad does not state whether or not he took that medication, but it was soon thereafter that he was brought to the dispensary to again be examined by Dr. Moyer. Mr. Muhammad does not allege that Dr. Schwartz had any other contact with him. He does not allege that Dr. Schwartz did or said anything with the knowledge that his actions would cause Mr. Muhammad further harm. Rather, he disagrees with his method of diagnosis, and the diagnosis itself. He does not contest that at any time his complaints were ignored, or that prescriptions were not provided. Mr. Muhammad, simply, has alleged malpractice; in this case, his allegations do not rise to the level required by the deliberate indifferent indifference. See Farmer 114 S.Ct. at 1984; Bellecourt, 994 F.2d at 431.

For both Dr. Schwartz and Dr. Roeder, Mr. Muhammad asserts that their diagnosis was wrong, and that they therefore delayed his admittance at a local hospital. However, Mr. Muhammad first complained of pains in the afternoon of December 19, 1994, and was admitted to the hospital on December 24, 1994 after being in Dr. Moyer's care for two days. While Mr. Muhammad undoubtedly suffered a severe injury, he has not--and, it seems, can not-- alleged that Drs. Schwartz and Roeder both were actually aware of the risks to his health caused by their actions, and that they recklessly disregarded those risks. Mere mention of a medical record listing a history of kidney stones is insufficient to show that the risk to Mr. Muhammad was so obvious it had to have been known. Cf., Farmer, 114 S.Ct. at 1981. The facts reveal instead a pattern of Mr. Muhammad complaining of pain and receiving a responsive prescription, and then within five days of the onset of pain being sent to an outside hospital for further treatment. While the negligent malpractice of medicine upon

Not Reported in F.Supp.  
(Cite as: 1997 WL 43015, *5 (E.D.Pa.))

Page 5

prisoners is unfortunate and will certainly not be condoned by this court, the actions of Dr. Schwartz and Dr. Roeder do not rise to "cruel and unusual punishment" prohibited by the Eighth and Fourteenth Amendment. The complaint must therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

D. State Malpractice Claim

*6 We had originally exerted jurisdiction over the second count in Mr. Muhammad's complaint, a state malpractice claim, via pendant jurisdiction. However, because we have dismissed the federal Section 1983 claim above, we have no independent basis to hear the state law claim. Ordinarily, when a court dismisses a federal claim early on in the case, it will not use its discretion to retain jurisdiction over any pendant claims, but rather will dismiss the state claims without prejudice to raise the matters in state court. Angst v. Mack Trucks, 969 F.2d 1530, 1534-5 (3d Cir.1989); Panis v. Mission Hills Bank, 60 F.3d 1486 (10th Cir.1995), cert. denied, 116 S.Ct. 1045 (1996); See 28 U.S.C. § 1367(c)(3). We see no reason to do otherwise in this case. We do not express any opinion on the outcome of the malpractice claim in the appropriate state court.

### III. CONCLUSION

Despite an examination of Mr. Muhammad's complaint in a light most favorable to him, we find that he has not alleged facts sufficient to make out a Section 1983 claim.

For the foregoing reasons, we will grant Defendants Dr. Schwartz and Dr. Roeder's motion to dismiss count one of Mr. Muhammad's complaint for failure to state a claim. We will dismiss Mr. Muhammad's pendant state malpractice claim without prejudice to bring the claim in the appropriate state court. We also dismiss without prejudice the complaint against Dr. Malabranch for failure to provide service.

An appropriate order follows.

### ORDER

AND NOW, this 27th day of January, 1997, upon consideration of Defendants Dr. Arnold Schwartz and Dr. John Roeder's Motion to Dismiss filed on January 3, 1997 and Plaintiff Bilal A. Muhammad's response thereto filed on January 13, 1997, it is hereby ordered, consistent with the foregoing opinion as follows:

1. Defendants' Motion to Dismiss is GRANTED as to Count I of the complaint;

2. Plaintiff's Count II is DISMISSED for lack of jurisdiction without prejudice to bring the action in the appropriate state court;

3. Plaintiff's complaint against Defendant Dr. Josey Malabranch is DISMISSED without prejudice for failure to provide service;

4. This case is CLOSED.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works